**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEMANT BHIMNATHWALA,<br>*Plaintiff*<br>v.<br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 1849 (LLA) |

**MEMORANDUM OPINION**

Plaintiff Hemant Bhimnathwala brings this action against the U.S. Department of Health and Human Services ("HHS") and HHS Secretary Robert F. Kennedy, Jr., (collectively, "Defendants"), challenging the constitutionality of HHS's administration of the Child Support Services ("CSS") program, 42 U.S.C. § 651 *et seq*. ECF No. 10. Specifically, Mr. Bhimnathwala alleges that Defendants have violated the Due Process Clauses of the Fifth and Fourteenth Amendments under theories of substantive due process (Count I) and procedural due process (Count II), the Equal Protection Clause (Count III), the First Amendment, (Count IV), the Tenth Amendment (Counts V and VII), the Ninth Amendment (Count VI), and the Fourth and Eighth Amendments (Count VIII). ECF No. 10. He has also filed a motion for a preliminary injunction, ECF No. 22, a motion for leave to file a surreply, ECF No. 30-1, an errata with an amended surreply, ECF No. 31, and two notices of supplemental authority, ECF Nos. 32, 33. Defendants have moved to dismiss for lack of subject-matter jurisdiction. ECF No. 24. For the following reasons, the court will grant Defendants' motion to dismiss and dismiss the case without prejudice.

## I. BACKGROUND

The court accepts the factual allegations from Mr. Bhimnathwala's second amended complaint, ECF No. 10, as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151-52 (D.C. Cir. 2015) (per curiam). Because Mr. Bhimnathwala is proceeding pro se, the court must consider all his filings. *See Brown*, 789 F.3d at 152. The court thus also considers Mr. Bhimnathwala's motion for a preliminary injunction, ECF No. 22, his amended surreply, ECF No. 31,[1] and his notices of supplemental authority, ECF Nos. 32, 33.

Congress has authorized annual appropriations "[f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living," along with "locating noncustodial parents, establishing paternity," and ensuring that children will have "assistance in obtaining support." 42 U.S.C. § 651. To effectuate this scheme, Congress requires the HHS Secretary to "make an incentive payment to each State for each fiscal year," *id.* § 658a(a), based on a formula that seeks to capture the state's degree of success at establishing paternity, approving child support orders, collecting child support due and arrearages for past-due child support, and operating a cost-effective system, *id.* § 658a(b).

Mr. Bhimnathwala is a U.S. citizen who currently resides in Illinois. ECF No. 10, at 1.[2] He is also the father of two adult children. ECF No. 22-2, at 1. In 2013, a "New Jersey family court denied [Mr. Bhimnathwala] equal parenting time . . . , designating him a 'non-custodial

---

[1] Defendants did not oppose Mr. Bhimnathwala's motion for leave to file a surreply, so the court will grant the motion as conceded under Local Civil Rule 7(b), and consider ECF No. 31 as his surreply.

[2] When citing to ECF Nos. 10, 22-1 and 22-2, the court refers to ECF-generated page numbers rather than any internal pagination.

parent'" and requiring him to make child support payments. ECF No. 10, at 3. Mr. Bhimnathwala claims that the family court relegated him to a non-custodial parental role "despite his fitness" as a parent. *Id.*; *see* ECF No. 22-1, at 4 (explaining that he was "relegated to every-other-weekend visitation" despite the judge making "no findings of abuse, neglect, or unfitness"). The New Jersey family court also ordered Mr. Bhimnathwala "to pay substantial child support obligations," even though his ex-wife "earned significantly more than [he] did." ECF No. 22-2, at 2. Sometime thereafter, Mr. Bhimnathwala moved to Illinois, and an "Illinois family court applied vague 'best interest of the child' standards" to "deny[] [him] equal parenting time." *Id.* As a result of this custodial arrangement, Mr. Bhimnathwala has suffered "years of lost parenting time with [his] children during their formative years," and he continues to experience "alienation" that "affect[s] [his] relationships with [his] now-adult children." *Id.* at 8.

## II. PROCEDURAL HISTORY

Mr. Bhimnathwala first filed suit in 2019 in the District of New Jersey against the State of New Jersey Judiciary, state superior court judges and supreme court justices, and his ex-wife. Compl., *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, No. 19-CV-21389 (D.N.J. Dec. 12, 2019), ECF No. 1. He alleged that the U.S. Constitution mandated a presumption of equal parenting time in child custody cases and asked the federal court to "return" all child support paid to his ex-wife, "recompute alimony in a gender-neutral way," and award damages and costs. *Id.* at 4. The federal court dismissed his case for lack of subject-matter jurisdiction, and, with respect to his ex-wife, for failure to state a claim. *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, No. 19-CV-21389, 2020 WL 7237947, at *1 (D.N.J. Dec. 9, 2020), *aff'd*, 858 F. App'x 558 (3d Cir. 2021).

Mr. Bhimnathwala then commenced this action in June 2025. After filing two amended complaints, ECF Nos. 7, 10, he filed a motion for entry of default judgment, ECF No. 20. The court declined to enter a default judgment, explaining that Defendants' deadline to respond to the second amended complaint had not yet passed. Oct. 23, 2025 Minute Order. Mr. Bhimnathwala subsequently filed a motion for a preliminary injunction, ECF No. 22, and Defendants filed a joint motion to dismiss the second amended complaint and an opposition to the motion for a preliminary injunction, ECF Nos. 24, 25. Both motions are ripe for disposition. ECF Nos. 24, 25, 27 to 29. Mr. Bhimnathwala also seeks leave to file a surreply, ECF Nos. 30, 31, which the court has granted, *see supra* n.1, and he has filed two notices of supplemental authority, ECF Nos. 32, 33.

## III. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is generally "presumed that a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Complaints filed by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). This "liberal construction" for pro se plaintiffs "is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). Thus, "even a pro se plaintiff must meet his burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss." *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014).

## IV. DISCUSSION

Article III standing is comprised of three elements: "(1) the plaintiff must have suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) there must exist 'a causal connection between the injury and the conduct complained of'; and (3) it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 991-92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Mr. Bhimnathwala argues that he has established both "retrospective" standing based on his 2013 New Jersey state court child support proceedings, and "prospective" standing based on the risk that he may again be subject to an illegal child support order. ECF No. 10, at 8-9. The court addresses each in turn.

First, Mr. Bhimnathwala alleges that he experienced "concrete constitutional injuries through federal incentive-driven denial of fundamental parental rights, excessive financial obligations, interstate mobility restrictions, and First Amendment violations." *Id.* at 2. That is, Mr. Bhimnathwala alleges that HHS's administration of CSS program grants caused the New Jersey family court in 2013 to designate him a non-custodial parent and impose "inflated" child support obligations. *Id.* at 3. He claims that this arrangement has caused him to experience

alienation from his now-adult children, burdened him with outsized child-support payments, restricted his mobility because "[s]tandard custody orders tie fit parents to specific locations," and constrained his ability to speak to his children by virtue of limiting his custody. *Id.* at 10; *see id.* at 9-10. Defendants argue that Mr. Bhimnathwala fails to demonstrate the requisite causation or redressability to establish standing based on the custody order governing his relationship with his now-adult children and ex-wife. ECF No. 24-1, at 9-10. The court agrees.

A plaintiff must demonstrate that the injury he suffers is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)); *see Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, 848 F. App'x 428, 431 (D.C. Cir. 2021) (noting that the D.C. Circuit has "repeatedly held that litigants cannot establish an Article III injury based on the independent actions of some third party not before this court" (internal quotation marks omitted) (quoting *Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 786 F.2d 18, 25 (D.C. Cir. 2015))). Mr. Bhimnathwala contends that his injury is properly traceable to Defendants because HHS distributes millions of dollars each year to states based on a formula that factors in each state's amount of child support collected. ECF No. 10, at 2-3. He states that "[t]his zero-sum competition creates mathematical pressure for states to maximize child support collections by minimizing fathers' custody time, as reduced paternal custody generates higher support obligations and increased federal payments." *Id.* at 3. And he alleges that HHS violates the Constitution because the agency "fails to exclude from incentive calculations any cases involving constitutional violations, effectively rewarding states for systematic violations of fundamental rights." *Id.* Thus, on Mr. Bhimnathwala's telling, "[t]he causation chain is direct: HHS creates formula → Formula rewards higher collections →

Higher collections result from denying equal custody → States deny equal custody to maximize federal payments → Plaintiff suffers constitutional violations." ECF No. 27, at 19. But that chain is far from direct. Rather, core to Mr. Bhimnathwala's theory is the assumption that the state judge in his family court case chose to deny Mr. Bhimnathwala equal parenting time so that he would be ordered to pay child support, and that the judge did so because that would increase the amount of grant money that HHS paid to the state of New Jersey. That contention is far too speculative to satisfy Article III standing and makes little practical sense. There is no reason to believe that a state family court judge is making her decisions based upon a policy interest in ordering enough child support payments to cause the federal government to send money to her home state. Mr. Bhimnathwala never explains the mechanism by which HHS payments create pressure on state court judges. He does not allege that the judges would personally benefit from any such increased payments, nor does he allege that the state imposes consequences on judges for failing to order child support. Rather, Mr. Bhimnathwala's theory of his injury runs through precisely the type of third-party independent action—a decision by a neutral arbiter based on state-law principles—that defeats the requisite causation for Article III standing. *See Mideast Sys. & China Civ. Constr. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1178 (D.C. Cir. 1986) (explaining that "the presence of an independent variable between either the harm and the relief or the harm and the conduct makes causation sufficiently tenuous that standing should be denied").

Mr. Bhimnathwala's arguments are not to the contrary. First, Mr. Bhimnathwala relies on *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497 (2007) to assert that "probabilistic risk suffices" to establish traceability. ECF No. 27, at 19. But the defendant in that case "d[id] not dispute the existence of a causal relationship between manmade greenhouse gas emissions and global warming," *Massachusetts*, 549 U.S. at 523, whereas here Defendants dispute

causation and identify an intervening decisionmaker in the form of the state family court judge, *see* ECF No. 24-1, at 10-12.

Second, Mr. Bhimnathwala argues that so-called "legislative courts" created under Article I—namely, the District of Columbia's local courts and U.S. territorial courts—"demolish[]" Defendants' argument that HHS lacks control over the relevant decision-makers. *See* ECF No. 31, at 1-2. But Defendants' argument does not rest on the state or federal nature of the courts that impose child-support obligations; rather, it turns on the independence of judicial decision-making. *See* ECF No. 24-1, at 10-12.[3] Mr. Bhimnathwala provides nothing to substantiate his argument that any particular judge is responsive to the "incentives" of grant money that the federal government provides to state or territorial administrative branches. Mr. Bhimnathwala's theory of causation "proved" by mathematical correlation between federal grant amounts and state child support is unavailing because the correlation is more easily explained by a variety of causal factors than the theory of widespread judicial misfeasance that Mr. Bhimnathwala advances here. *See Nw. Airlines, Inc. v. Fed. Aviation Admin.*, 795 F.2d 195, 203 (D.C. Cir. 1986) (explaining that a plaintiff's "bare intuition of a causal nexus" was insufficient to support standing).

---

[3] Because both the District of Columbia's local courts and territorial courts "perform[] an inherently judicial role," *Ortiz v. United States*, 585 U.S. 427, 444, their deliberations are as independent from executive control as those of Article III courts. *See Trump v. Slaughter*, 146 S. Ct. 2283, 2309 n.9 (2026) (explaining that judges of the District of Columbia local courts "exercise the judicial power of the District, just as territorial judges exercise the judicial power of their respective territories," and thus neither "exercise executive power"); *see also United States ex rel. Goodrich v. Guthrie*, 58 U.S. 284, 310 (1854) (explaining that the judiciary is not "subject to the executive" and instead "constitutes a coordinate branch of the government, over which the President has no superintendence, and can exercise no control").

For the same reason that Mr. Bhimnathwala fails to establish causation, he also fails to establish redressability. *See Newdow v. Roberts*, 603 F.3d 1002, 1012 n.6 (D.C. Cir. 2010) ("[C]ausation and redressability are closely related, and can be viewed as 'two facets' of a single requirement." (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984))). Even if HHS ceased to impose the challenged incentive system on states, Mr. Bhimnathwala has provided no non-conclusory allegations to support his claim that a judge would have entered a different order in his family court cases.

Second, Mr. Bhimnathwala argues that he has prospective standing because the CSS program causes "systematic chilling effects on fundamental marriage and family formation rights." ECF No. 10, at 2. Specifically, he alleges that he experiences an "impossible choice" between (1) foregoing his fundamental right to marry someone and to have children with them and (2) risking that he would then divorce this person and be subject to an unconstitutional child support order. *Id.*; *see id.* at 9-10. But that theory "relies on a highly attenuated chain of possibilities" and thus "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Mr. Bhimnathwala fails to make any allegation that he is currently considering another marriage, another child, or another divorce. *See generally* ECF No. 10. And even if Mr. Bhimnathwala had previously felt "deterred from pursuing relationships" because of the risk of a state court subjecting him to an unconstitutional child support order, *see* ECF No. 27, at 24, it is "no more than conjecture to suggest" that, even if Mr. Bhimnathwala had another marriage, another child, and another divorce, a state court judge would act allegedly unconstitutionally in a subsequent child-support proceeding, *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).

None of Mr. Bhimnathwala's supplemental materials affects the court's conclusion. To begin, Mr. Bhimnathwala filed a notice of supplemental authority arguing that the Supreme Court's decision in *Olivier v. City of Brandon, Mississippi*, 607 U.S. 552 (2026) bears on his case by demonstrating that a past injury can support a claim for a future injunction. ECF No. 32. But the court decided nothing in that case about Article III standing. Rather, *Olivier* concerned a separate doctrine that limits jurisdiction over a plaintiff's civil rights lawsuit for damages when prevailing on the civil suit would necessarily require the court to invalidate some aspect of the plaintiff's underlying criminal conviction. 607 U.S. at 565-66. That doctrine has no bearing on Mr. Bhimnathwala's standing. Next, Mr. Bhimnathwala filed a second notice of supplemental authority concerning a piece of legislation passed in Mississippi establishing a rebuttable presumption that joint physical custody serves the best interest of a child. ECF No. 33. He argues that this presumption proves that the federal government is forcing other states to divide custody in a way less favorable to non-custodial fathers. *Id.* at 1. Not only is this contention wholly speculative, but the Mississippi legislation cuts against Mr. Bhimnathwala's causation argument by demonstrating that states indeed have reached "state-by-state policy variations . . . beyond HHS's control." *Id.*

Finally, Mr. Bhimnathwala contends that he *must* have standing because this suit is his "only available constitutional remedy." ECF No. 27, at 4. But "[e]ven if [Mr. Bhimnathwala's] . . . frustration [was] justified, . . . an absence of satisfactory alternative

routes to review would not necessarily operate to create jurisdiction before this court." *Gage v. U.S. Atomic Energy Comm'n*, 479 F.2d 1214, 1221 (D.C. Cir. 1973).[4]

Mr. Bhimnathwala's motion for preliminary relief, ECF No. 22, also fails for lack of Article III standing. To receive a temporary restraining order or a preliminary injunction, the moving party must show (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Mr. Bhimnathwala cannot show a likelihood of success on the merits because his claims are not justiciable. *See Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015). Nor has he demonstrated that he will suffer irreparable injury absent judicial intervention. "[P]roving 'irreparable' injury is a considerable burden," and, much like standing, it requires "proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (emphasis omitted) (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). While Mr. Bhimnathwala contends that "[e]very day of delay means thousands more fathers are denied equal parenting without strict scrutiny," ECF No. 22-2, at 8, he fails to allege that Defendants' conduct is likely to affect him at all, let alone inflict irreparable harm.

---

[4] Because the court concludes that it lacks subject-matter jurisdiction over Mr. Bhimnathwala's claims due to his failure to establish Article III standing, the court need not address Defendants' alternative arguments that Mr. Bhimnathwala's claims are barred by sovereign immunity or that he fails to state a plausible claim for relief, *see* ECF No. 24, at 7-9.

## V. CONCLUSION

For the foregoing reasons, the court will grant Mr. Bhimnathwala's Motion for Leave to File a Surreply, ECF No. 31-1, *see* ECF Nos. 31, 32; grant Defendants' Motion to Dismiss, ECF No. 24; dismiss Mr. Bhimnathwala's Second Amended Complaint, ECF No. 10; and deny Mr. Bhimnathwala's Motion for a Preliminary Injunction, ECF No. 22. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: September 16, 2026